

1  Youngsoo S. Lee
2  555 Puddingstone Drive
   San Dimas  CA  91773
3  (310) 677-0400  Fax  (310) 677-0403

4  In Pro Se
5

6              IN THE CHANCERY COURT FOR SHELBY COUNTY
7                        STATE OF TENNESSEE

8  YOUNGSOO S. LEE                    )  Case No.
9                                     )
10            Plaintiff               )  VERIFIED COMPLAINT FOR
                                      )  TEMPORARY AND PERMANENT
11 v.                                 )  RESTRAINING ORDER:
                                      )  DECLARATORY RELIEF;
12                                    )  INJUNCTION; VIOLATION OF
13 BANK OF AMERICA, N.A.; BAC         )  CONSENT DECREE; RESCISSION
   HOME LOAN SERVICES &               )  OF DEED OF TRUST;  FRAUD;
14 MERSCORP ("MERS").                 )  REAL ESTATE SETTLEMENT
                                      )  PROCEDURES ACT; FEDERAL
15                                    )  TRUTH IN LENDING ACT;
16                                    )  FRAUDULENT
17 Does 1 through 10,                 )  MISREPRESENTATION; BREACH
                                      )  OF FIDUCIARY DUTY; UNJUST
18                                    )  ENRICHMENT; CIVIL
19                                    )  CONSPIRACY; CIVIL RICO; QUIET
                                      )  TITLE; USURY; PREDATORY
20            Defendant(s).           )  LENDING; UNFAIR DEBT
21                                    )  COLLECTION;  and damages
22                                    )
23 _____    )
24
25                    NATURE OF THE ACTION
26     This Plaintiff brings complaint against named Defendants pursuant to 18
27 U.S.C. §1962 and 18 U.S.C. §1964 otherwise known as the "Racketeer Influenced
28

     VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF.
                                  - 1 -



EXHIBIT
1

1  and Corrupt Organizations Act," hereinafter ("RICO") and for all violations of law
2  heretofore claimed.
3      Wherein on October 13, 2010 Tennessee Attorney General Bob Cooper joined
4  the Mortgage Foreclosure Multistate Group, a coalition of 50 attorneys general,
5  state-level mortgage regulators and bank oversight agencies to jointly investigate
6  improper foreclosure processing procedures. "We want to determine if there are any
7  other types of problems regarding mortgage foreclosure documents in Tennessee
8  and whether there is any kind of troublesome pattern, "
9      Attorney General Cooper said. In this ongoing investigation, the Mortgage
10  Foreclosure Group's chief focus will be the accuracy and validity of documents that
11  lenders and servicers used to support foreclosure proceedings. Specifically, the
12  states will review whether individuals who confirmed facts supporting foreclosures
13  – either in affidavits or other related documents - actually had personal knowledge
14  of the facts to which they swore.
15      In recent weeks, some lenders have acknowledged using electronic devices to
16  sign sworn documents. To the extent so-called "robo-signing" was used to sign
17  foreclosure documents, questions arise about the actual personal knowledge of
18  employees whose signatures appeared on the affidavits. Thus, because thousands of
19  documents were reportedly signed electronically, the states will review whether the
20  signer actually confirmed the facts contained in their affidavits. The workgroup will
21  also review whether foreclosure paperwork was signed outside of the presence of a
22  notary public, contrary to state law. Both judicial and non-judicial foreclosures will
23  be subject to the workgroup's investigation.
24      On April 13, 2011, the national press began reporting that one of the
25  Defendants, Bank of America, U.S. Controller had placed a moratorium across the
26  country on foreclosures, based on the illegalities in the policies, practices and
27  procedures of their own employees and the law firms representing their interests in
28  foreclosures.

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF.

- 2 -

Additionally, and as to the claims of the Plaintiff to this Complaint, the legality of MERS on Deeds of Trust is being litigated in In Re MERS Litigation, MDL 2119, United States District Court Arizona.

This case arises due to the fact that for the Plaintiff, the Mortgage and the foreclosure is based upon a mortgage and a Note in the mortgage that is not held by the same entity or party and are based upon a mortgage that was flawed at the date of origination of the loan because Mortgage Electronic Registration Systems ("MERS") was named as the beneficiary or nominee of the lender on the mortgage or an assignee, and because the naming of MERS as the beneficiary was done for the purpose of deception, fraud, harming the borrower and the theft of revenue from all one hundred and twenty (120) Tennessee Counties through the illegal avoidance of mortgage recording fees.

For purposes of this Complaint the term "Mortgage" shall include the term "Deed of Trust."

In this case where a foreclosure has been filed, the entity filing the foreclosure has no pecuniary in the mortgage loan. The foreclosing entity is a third party. The entity lacks standing, and most times, the capacity to foreclose. The entity has no first hand knowledge of the loan, no authority to testify or file affidavits as to the validity of the loan documents or the existence of the loan. The entity has no legal authority to draft mortgage assignments relating to the loan. The foreclosing entity and its agents regularly commit perjury in relation to their testimony and sworn affidavits.

The "lender," on the original Promissory Note was not the lender. The originators of the loan immediately and simultaneously securitized the note. The beneficial interest in the note was never in the lender. MERS, acting as the mortgagee or mortgage assignee, was never intended to be the lender nor did it represent the true lender of the funds for the mortgage. The true owner or beneficiary of the mortgage loan has not declared a default and usually no longer

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF.

- 3 -

have an interest in the note. The Trusteee does not have the permission of the beneficial owners of the Note to file foreclosure on their behalf.

Defendants have and will cloud the title and illegally collect payments and are attempting to foreclose upon the property of the Plaintiff when they do not have lawful rights to foreclose, and are not holders in due course of the Note.

Any mortgage loan with a Mortgage recorded in the name of MERS, is at most, an unsecured debt. The only parties entitled to collect on the unsecured debt would be the holders in due course and beneficial owners of the original Promissory Note.

This is a Complaint brought for violations of Tennessee and Federal law. It is brought because the entities lack capacity (fake Trusts), and lack standing as a real party in interest to the underlying debt; which would exist in the form of a negotiable instrument, a Promissory Note.

Although the loan transactions in question contain several violations of Federal and state statutes and common law torts, which have been perpetrated, this Complaint also concerns violations of law pertaining to the improper and illegal drafting, execution and public recording of Affidavits, Mortgages and Assignment of Mortgages used to illegally divest the Plaintiff of title to his property.

In addition to damages, the violations have created and continue to create a permanent cloud on the Plaintiff's title. This cloud potentially affects not just the Plaintiff, but also every resident of Tennessee and the United States as all have the potential to be the title holders of the clouded property. It also affects land records in relation to the titles illegally divested.

A pattern and practice was invented by the Servicers, MBS Trusts, the document processing companies and law firms to procure fraudulent and forged documents for the sole purpose of creating a fraud in the public record in order to illegally take property in foreclosure.

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF.
- 4 -

Certain individuals who were the employees of the law firm executed and notarized forged documents as to the ownership of the loan. They have committed widespread counts of fraud, perjury and forgery in the tens of thousands. These forgers have been referred ton in the press with the vernacular term "robo-signers."

In these cases, the property could be foreclosed by default, sold and transferred without ANY real party in interest havening ever come to Court and with out the name of the "Trust" or the owners of the mortgage loan, ever having been revealed. Many times the Servicer will fraudulently keep the proceeds of the foreclosure sale under the terms of a Pooling and Servicing Agreement as the "Trust" no longer exists or has been paid off.

The Court and the property owner will never know that the property was literally stolen.

After the property is disposed of in foreclosure, the real owners of the mortgage loan are still free to come to Court and lay claim to the mortgage loan for a second time. These parties who may actually be owed money on the loan are now also the victims of the illegal foreclosure. The purchaser of the property in foreclosure has a bogus and clouded title, as well as all other unsuspecting buyers down the line. Title Insurance would be impossible to write on the property.

The "Trusts" coming to Court are actually Mortgage Backed Securities ("MBS"). The Servicers, are merely administrative entities which collect the mortgage payments and escrow funds. The MBS have signed themselves up under oath with the Securities and Exchange Commission ("SEC,") and the Internal Revenue Service ("IRS,") as mortgage asset "pass through" entities wherein they can never own the mortgage loan assets in the MBS. This allows them to qualify as a Real Estate Mortgage Investment Conduit ("REMIC") rather than an ordinary Real Estate Investment Trust ("REIT"). As long as the MBS is a qualified REMIC, no income tax will be charged to the MBS. For purposes of this action, Trust" and MBS are interchangeable.

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF.

- 5 -

Real Estate Mortgage Investment Conduit (REMIC):

Although the Defendants like Recontrust Company attempting to foreclosure refer to themselves as "Trustees" of a"Trust," the entities are not "Trustees" nor "Trusts" as defined by Tennessee law. Neither are the entities registered as Business Trusts nor Business Trustees as required by Tennessee law. In every case, where one of these Mortgage Backed Securities have come to a Tennessee Court, the entity foreclosing lacked capacity to foreclose or to file suit in the State of Tennessee. There is no "Trust Agreement" in existence. The entity filing has utilized a Tennessee legal term it has no right to use for the sole purpose of misleading and fooling the Honorable Court.

Although the "Trust" may be registered with the Securities and Exchange Commission ("SEC") and the Internal Revenue Service ("IRS") as a Real Estate Mortgage Investment Conduit ("REMIC"), more often it is not properly registered in any state of the union as a Corporation, Business Trust, or any other type of corporate entity. Therefore, the REMIC does not legally exist for purposes of capacity for filing foreclosure affidavits or a law suit in Tennessee or any other State.

REMICS were newly invented in 1987 as a tax avoidance measure by Investment Banks. To file as a REMIC, and in order to avoid one hundred percent (100%) taxation by the IRS and the State of Tennessee, an MBS REMIC could not engage in any prohibited action. The "Trustee" cannot own the assets of the REMIC. A REMIC Trustee could never claim it owned a mortgage loan. Hence, it can never be the owner of a mortgage loan.

Additionally, and important to the issues presented with this particular Complaint, is the fact that in order to keep its tax status and to fund the "Trust" and legally collect money from investors, who bought into the REMIC, the "Trustee" or the more properly named, Custodian of the REMIC, had to have possession of ALL

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF.
- 6 -

the original blue ink Promissory Notes and original allonges and assignments of the Notes, showing a complete paper Chain of Title.

Most importantly, the "Trustee"/Custodian MUST have the mortgages recorded in the investors name as the beneficiaries of a MBS in the year the MBS closed." Every mortgage in the MBS should have been publicly recorded in Wilson County where the property was located with a mortgage in the name similar to "2008 XYZ REMIC Trust on behalf of the beneficiaries of the 2008 XYZ REMIC Trust." The mortgages in the referenced example would have had to been publicly recorded in the year 2008.

As previously pointed out, the "Trusts" were never set up or registered as Trusts. The Promissory Notes were never obtained and the mortgages never obtained or recorded.

The "Trust" engaged in a plethora of "prohibited activities" and sold the investors certificates and Bonds with phantom mortgage backed assets. There are now nationwide, numerous Class actions filed by the beneficiaries (the owners/investors) of the "Trusts" against the entities who sold the investments as REMICS based on a Bogus prospectus. For example Citigroup which owns CitiMortgage is being sued by shareholders and investors in (Charles Schwab Corporation v. BNP Paribas Securities et al., Superior Court of California (San Francisco), no. CGC-l0-S01610.) in which the Plaintiffs allege "actionable misstatements or omissions in connection with the issuance and underwriting of residential mortgage-backed securities, and are seeking rescission of their investments or other damages."

In the above scenario, even if the attorney for the Servicer/Bank who is foreclosing on behalf of the Trustee (who is in turn acting for the securitized trust) produces a copy of a Note, or even an alleged Original, it would be self-incriminating because it would mean that the mortgage loan was NEVER conveyed into the trust under the requirements of the prospectus for the trust or the REMIC

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF.

- 7 -

requirements of the IRS. It is therefore NOT in the Trustee's best interest to show the Honorable Court the Note, because they were trying to hide this fraud from the homeowner and they also believe they might actually succeed in hiding the fraud they have committed from the Honorable Court.

As applied to the Plaintiff in this Complaint, the end result would be that the required Mortgage-Backed Security asset, or any part thereof (mortgage Note or security interest), would not have been legally transferred to the trust to allow the trust to ever even be considered a "holder" of a mortgage loan. Neither the "Trust" nor Citimortgage would have standing or be a real party in interest. They will never be the proper party to appear before the Courts. Also neither the "Trust" nor the Servicer would ever be entitled to bring a foreclosure or declaratory action. The crafty lawyers from the foreclosure mill representing the Trustee in this particular Complaint are hoping the Honorable Court doesn't discern their illegal and fraudulent activity regarding the Plaintiff's mortgage, that's why they are in such a hurry to conduct an illegal foreclosure sale of the Plaintiff's home, in hopes that their actions go under the radar and are not picked up by the Honorable Court.

Any transfer of mortgage loans into the trust after the "cut off date" (in the example 2008), destroys the trust's REMIC tax-exempt status, and these "Trusts" (and potentially the financial entities who created them) would owe millions of dollars to the IRS and the State of Texas as the income would be taxed at one hundred percent (100%).

Subsequent to the "cut off date" listed in the prospectus, whereby the mortgage notes and security for these notes had to be identified, and Note and Mortgages transferred, and thereafter, the pool is permanently closed to future transfers of mortgage assets.

In any case, the lack of acquisition of the Plaintiff's mortgage loans violates the prospectus presented to the investors and the IRS REMIC requirements.

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF.

- 8 -

If an MBS Trust was audited by the IRS and was found to have violated any of the REMIC requirements, it would lose its REMIC status and all back taxes would be due and owing to the IRS as well as the state of Tennessee. As previously stated, one hundred percent (100%) of the income will be taxed.

As the Defendants are identified and the identity of the MBS REMICs revealed through this Complaint, the individual "Trusts"/ MBS REMICs will be turned over to the IRS for auditing.

Upon information and belief, it is asserted that the IRS is being made aware that a list of alleged "unqualified" REMICs is forthcoming through the identity of the Plaintiff's mortgage loan "Trusts" in this Complaint.

Securitization and Standing:

To the judges throughout the State of Tennessee and to the homeowners, the foreclosing Defendants, or "Trust" entity appears to be a bank or lender. This falsity is due to its name in the style of the case. They are not banks or lenders to the loan. They are not a beneficiaries under the loan. They do not possess a Mortgage in the property. They will never have a right to posses a mortgage in the property.

In such cases, the "Trustee" attempting to administer the illegal home sale and foreclosure is not known to the homeowner. The very first time the homeowner learned that his home was put up as collateral for a publicly traded and sold home loan REMIC (a federally regulated Security) is at the time he was served with a foreclosure notice.

These "trusts" are actually Mortgage Backed Securities (MBS). An MBS is an investment vehicle, defined and regulated as "Security" by the Security and Exchange Commission (SEC.)

At the time the Plaintiff signed a Promissory Note and Mortgage, he was unknowingly converting his property into an asset of a MBS. The homeowner was never informed of the nature of the scheme. He was deliberately induced into

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF.
- 9 -

signing a Negotiable Instrument which was never intended as such, but was intended as collateral for a MBS.

The fact that the loan was meant to fund a MBS was a "material disclosure" which was deliberately and intentionally undisclosed. The failure to disclose the identity of the true lender at closing was also a "material disclosure;" the nature of which would make the contract voidable under Tennessee contract law.

Mostly beginning in 2004, hundreds of thousands of residential mortgages were bundled together (often in groups of 5,000 mortgages), and investors were offered the opportunity to buy shares of each bundle, an MBS. Some of the bundles were offered as Bond Certificates, guaranteeing a rate of return. Many of these Bond MBS were funded by large private and governmental pension funds and in some cases, as the case with Greece, by foreign governments.

Investments were made in the MBS, based on a prospectus, which had to be filed with the SEC. The prospectus was created, the MBS rated and the investors money was pledged and collected long before the homeowner ever even applied for a loan.

In other words, the MBS was created first. The loans fitting the description of those found in the prospectus had to then be created and originated. Each MBS/Trust was required to keep a list of the individual loans they had allegedly recruited for the MBS. This list has to be publicly recorded with the SEC. However, the SEC did not require any proof that the loans actually existed or were possessed by the MBS. For the tax man and in order to qualify as a REMIC, the Notes and mortgages listed with the SEC had to be held, and mortgages recorded ON THE DATE THE MBS CLOSED.

Each such MBS bundle was given a name, such as "XYZ Home Loan Trust 2008 ABC8." The name indicates information about the particular trust, such as the year it was created and closed and its reference name and number for the SEC and IRS.

As required by the SEC, each MBS/Trust has a Pooling and Servicing Agreement ("PSA") which must be publicly filed. The only purpose for the PSA is for the administration and distribution of funds to the investors and the obligation of the so called Trustee in administering the MBS. The investors who put up the money for the MBS and who received the MBS Certificates or Bonds, are not parties to the PSA.

The PSA merely sets forth what happens after the mortgages are bundled together. However, the PSA also sets forth a Cut Off Date. The Cut Off Date is the date on which all mortgage loans in the MBS/Trust must be identified and set out in the SEC required list of mortgage loans. Often, these loans were identified and listed for the SEC and the investors, regardless of whether the loan existed or had been closed. Some loans were listed in SEC filings in multiple MBS.

Like the Cut Off Date, each MBS/Trust had a Closing Date. The Closing Date is the date that the individual identified mortgages were to be transferred through the Custodian for the benefit of the investors. The Trust Custodian must certify that for each mortgage loan, the Trust Custodian has possession of the original Promissory Note, all original endorsements and assignments transferring the Note and proof that the ownership of the Note has been transferred for the benefit of the shareholder/investors. Further proof of the ownership of a mortgage loan is required by a public recording of the Mortgage or Assignment of the Mortgage itself. This MUST have occurred by the closing date.

The Servicers/Banks worked to collect money for the MBS from the individual loans and collected and distributed escrow funds. The "Trustees" were Custodians, akin to administrators.

Typically, and contrary to the law, the Trust would include equivalent language regarding the handling of these required Assignments: "Assignments of the Mortgage Loans to the Trustee (or its nominee) will not be recorded in any jurisdiction, but will be delivered to the Trustee in recordable form, so that they can

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF.
- 11 -

be recorded in the event recordation is necessary in connection with the servicing of a Mortgage Loan." This publicly recorded provision to deliberately keep the transfers out of the public record, violates the Mortgage Recording Statute of almost every State of the Union. (i.e: The clerk of the court shall record photographically any assignment of a mortgage with an attachment or rider affixed to it containing the names of the parties as they appear on the original mortgage and a reference to the book number and page number where the mortgage is recorded.)

While attempting to circumvent Tennessee recording Statutes, the MBS Trust created for itself a situation wherein it had no legally recognizable interest in the loans for the benefit of the investors. The investors were invested in nothing. The MBS possessed nothing on the date the REMIC closed and perpetrated a fraud on the investors and the American taxpayer through its fraudulent qualification as a REMIC with the Securities and Exchange Commission.

No bank, lending institution or "Trustee" ever pledged or put up the money for the Homeowners' loans. The foreclosing entities had or have no pecuniary, ownership stake or beneficial interest in the homeowners' loans.

A review of the foreclosures filed by the Servicers and "Trusts" typically states that the "Trustee" is the "Holder" of the homeowners' Note. The Complaint in foreclosures never states that the "Trustee is the OWNER of the homeowners' Note.

More often than not, the statement that the foreclosing entity "holds" the original Promissory Note is an untruth. The majority of the securitized Notes no longer exist, having been deliberately destroyed or disposed. At the time the feeding frenzy of securitization occurred (mostly between 2004 and 2008,) paperwork was of little consequence as the goal of the originators was to fill and securitize as many loans as possible in order to create the loan number list for the SEC. Likewise, whether or not the loans were ever repaid was of absolutely no consequence as the Servicers and "Trusts" had nothing to loose; the loans having been funded by the investors and were insured by multiple derivative contracts or Credit Default Swaps.

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF.
- 12 -

Often, the bank or servicer would have a provision in its Pooling and Servicing Agreement which would allow it to collect and keep the proceeds of any foreclosures it could accomplish after the MBS Trust was paid off by derivatives and closed. Often, a Servicer will show up in a Tennessee Court to foreclose on behalf of a Trustee who administers a MBS Trust which no longer exists.

When the scheme was originated and implemented en mass (mostly between the years 2004 and 2007), what was not planned for or counted upon was the immediate 2008 massive real estate market collapse and the thousands of voluntary and involuntary defaults and Truth In Lending Act (TILA) loan rescissions of mortgage loans. At the same time, the fair market value of housing dropped by as much as fifty percent (50%) in some parts of the country.

No legal plan was in place for such a wide spread loss of the assets. No legal plan was ever in place to deal with the fact that the original Prospectus to the shareholder/investors was a myth. No legal plan was ever in place for the shareholder/investors to come to Court in an attempt to collect on the assets of the MBS they purchased.

Most importantly for Tennessee non-judicial foreclosures or Declaratory actions, the investors or beneficiaries did not have contracts with the Trusts, Servicers, or Trustees to act on their behalf in a suit in foreclosure or foreclosure sales or otherwise.

In order to collect on the mortgage loans and divest Americans of their homes, Servicers and "Trustees" have had to mislead the Courts as to their standing in foreclosure. They have had to create, forge and fabricate phony documents in order to obtain an Order of Sale in Foreclosure, and in non-judicial states they have filed fake and forged affidavits with the County Clerks office giving the false impression that they had legal standing to sell the homes. All the homeowners in Tennessee whose homes have been foreclosed and sold at the steps of court houses have no

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF.

- 13 -

idea that those Trustees and Servicers were simply "Pretender-Lenders" with no standing to make them homeless using illegal and fraudulent schemes.

Because of the fraud committed in these illegal foreclosure sales, by banks like Bank of America, and their subsidiary Recontrust Company, thousands of homeowners have gone from sleeping in a warm bed to being out in the cold streets.

The Creation and Use of Fraudulent Affidavits and Mortgage Assignments:

In a foreclosure, the MBS/Trustee claims to be acting on behalf of the MBS/Trust and claims that it has acquired the loan from the originator. The multiple transfers of title of the mortgage loan in between the originator and the MBS/Trust creates a broken chain of title, and if the chain of title is broken, the contract becomes null and void. Because if the homeowner doesn't know who owns the loan, how can he know whom to pay?

As previously stated, when a Servicer (BAC) or Trustee like Recontrust Company is foreclosing, an additional break in the chain occurs as the Trustee is often never the mortgagee of record under a Mortgage Assignment and has absolutely no legal tie to the investors in the MBS. The "Trust" can never hold or transfer a Mortgage in the property on behalf of the investors. The IRS tax-code forbids Trustees or Services from holding any underlying assets in the trust.

In many of the cases, the originator is no longer in business and/or has been dissolved in bankruptcy. The MBS/Trustee never mentions the intervening transfers to the other parties or the shareholder/investors or to the Court. The MBS/Trustee never proves that such transfers lawfully occurred.

In the rush to create these trusts and sell shares to investors as fast and in as large a quantity as possible, the loans, Mortgages and Assignments were never prepared, filed or recorded. This means that the entity seeking to foreclose can NEVER prove the chain of ownership.

The Homeowner has no idea that the bank/Servicer is making payments to, corresponding with and applying for a modification with a mortgage loan servicer

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF.
- 14 -

instead of a mortgage loan owner or that the Servicer is keeping part or all of proceeds of the mortgage payments without the knowledge or permission of the investors.

MBS/Trustees and their lawyers discovered in the foreclosure process that the Note and Mortgage Assignments would never be located because they never existed. They also discovered that states did not allow blank Assignments or Assignments with retroactive effective dates. To solve the problem of the missing and non-existent Assignments, the MBS/Trustees, their attorneys and their Servicing Agents, decided to fabricate Assignments from thin air and then quietly record the fabricated Assignments. If a Promissory Note Assignment is presented to the Court, it deliberately does not state the date the Promissory Note was assigned. It was procured after the fact and is based on fraud and in violation of MBS Trusts' tax status requirements. The dateless Promissory Note Assignment or allonge is then affixed to a copy of the Promissory Note because the original Promissory Note simply does not exist.

The Assignments of the Mortgage were signed and notarized many years after the actual date of the loan and the date listed with the SEC and IRS as the "Closing" of the REMIC. In every one of these cases, the MBS Trust has been operating illegally as a tax exempt REMIC. The federal government is in turn, owed billions of dollars in income tax from these entities. The individual states of the union have causes of action on behalf of their citizens for the unpaid state tax.

Incredibly, most times, the Mortgage Assignments are dated after the filing of the foreclosure. Most foreclosures are filed without an Assignment at all and the Mortgage attached as the Exhibit is in the name of the original lender or a third nominal party like Mortgage Electron Registration Systems, Inc. ("MERS".) The foreclosures are invalid on their face. The recording statutes of every state in the union have been violated.

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF.
- 15 -

In most cases, the Note and Mortgage were severed or bifurcated at the closing table with the Mortgage being recorded in the name of MERS as "nominee" for the original lender. However, the original lender never actually loaned any money to the homeowner. The original lender was never owed or paid any money under the terms of the Note. There the Mortgage sat for years in the name of an entity, MERS, for which the homeowner owed no money and which would never be beneficiary under the Note.

As previously set out, often the MERS held the Mortgage as "nominee" for a lender who was out of business and/or liquidated in bankruptcy. There could be no party legally able to Assign the Mortgage on behalf of the dissolved lender. The only party who could authorize the Mortgage Assignment for a bankrupt lender would be the Bankruptcy Trustee. In these cases where a MERS mortgage has been assigned on behalf of a bankrupt entity, a criminal violation of the bankruptcy code had occurred.

Bank of America indicates MERS assigned it the Mortgage. However, an Assignment from MERS was illegal and a nullity. MERS never had an interest in the Note or Mortgage. If MERS was never the title holder, there was nothing to assign. 83. If MERS is not the title holder of properties held in its name, the chain of title was been broken, and no one has standing to sue or foreclose (MERS v. Nebraska Department of Banking and Finance 5-04-786. No.-- October 21, 2005.) Any Substitute or Successor Trustee who attempts to sell a property he doesn't have the right to foreclose on is committing fraud.

Because the Plaintiff has MERS named on his loan, each time the paperwork changed hands, he, the homeowner, should have been notified that someone new held the Note. Instead MERS was used as cover to prevent them from paying court fees once the title changed hands.

You can endorse the note as many times as you wish-but you have to have a clear chain of title right on the actual Note: For example: I sold the Note to Bill, who

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF.

- 16 -

sold it to Dave, who sold it to Tommy, and all our notarized signatures are actually, physically, on the Note, one after the other. If for whatever reason any of these signatures is skipped, then the chain of title is said to be broken. Therefore, legally, the mortgage note is no longer valid. That is, the person who took out the mortgage loan to pay for the house no longer owes the loan based on the fact that was established earlier that if the Homeowner does not know who owns the Note, they do not know whom to pay. The Plaintiff's loan has a "Broken Chain Title," created by MERS.

Bank of America's assertion that it has standing to foreclose is based on the supposed assignment of the loan by MERS which would be legally impossible since MERS is a mere nominee.

Several courts have also acknowledged that: "MERS is not the owner of the underlying Note and therefore could not transfer the Note, the beneficial interest in the deed of trust, or foreclose on the property secured by the deed," citing cases of: In Re Vargas, California Bankruptcy Court; Landmark v. Kesler, Kansas Federal court decision as to lack of authority of MERS; LaSalle Bank v. Lamy, a New York case; and In Re Foreclosure Cases, the "Boyko" decision from Ohio Federal Court.

If a Mortgage Assignment is dated, notarized and filed in a year after the year set forth in the name of the grantee trust, it was an Assignment fraudulently made for the sole purpose of facilitating an illegal foreclosure or to use as evidence as standing in an action to challenge a homeowner's TILA Rescission.

These Specially-Made Assignments have created havoc in the Courts and were done with the specific purpose of perpetrating a fraud on the Court.

In many cases, the foreclosing entities did not even bother to request that the Specially-Made fabricated Assignment be prepared prior to the filing of the foreclosure.

In more cases than not, the Assignments are prepared and filed AFTER the foreclosure action has been initiated. The MBS/Trust (who has no beneficial interest

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF.
- 17 -

in the loan and probably is not in possession of the original Note) files a foreclosure and then attempts to make it appear to the Court that the MBS/Trust magically knew prior to the Assignment that it would acquire the defaulting property several weeks or months after the foreclosure is filed.

Courts have repeatedly asked the MBS/Trustee to explain why they were acquiring non-performing loans and whether such acquisition was a violation of the Trustee's fiduciary duty the beneficiaries under the MBS/Trust. No MBS/Trustee has ever come forth and explained tat MBS/Trust actually listed the loan in its SEC loan list without possessing the loan and that the loan was "acquired" years before the Assignment. As a result, there are many decisions with observations similar to this observation by Judge Arthur M. Schack of Kings County, New York, in HSBC Bank v.Vatentin, 21 Misc. 3d 1124 [A]: "Further, according to plaintiff's application, the default of defendants Valentin and Ruiz began with the nonpayment of principal and interest due on January 1, 2007. Yet four months later, plaintiff HSCB was willing to take an assignment of the instant nonperforming loan, four months in arrears?"

In Deutsche Bank National Trust Co. v. Harris, Judge Arthur M. Schack, Kings, New York, Index No. 39192/2007 (05 FEB 2008) opined again: "Further, the Court requires an explanation from an officer of plaintiff DEUTSCHE BANK as to why, in the middle of our national sub-prime mortgage crisis, DEUTSCHE BANK would purchase a non-performing loan from [bankrupt and now dissolved] I N DYM AC...."

In cases where the Trust failed to get a valid Assignment, whether before or after the foreclosure, is further complicated by the actual parties participating as Assignors. Most of the major loan originators, listed on the Mortgages or listed as a "nominee" of MERS on the original Promissory Notes, have been sold, closed or dissolved in bankruptcy. These include, but are not limited to; American Home Mortgage, Option One Mortgage, Countrywide Home Loans, and INDYMAC.

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF.

- 18 -

When these mortgage companies filed for bankruptcy, the Trusts did not claim an interest in the assets (loan lists.) Years later, when Note and Mortgage Assignments were required for the MBS/Trust or Servicer to attempt foreclosure, a bankruptcy Court's permission was needed to assign billions of dollars in Notes and Mortgages. Knowing that permission would not be granted, permission was NEVER sought in any of the aforementioned bankruptcies. Hence, the need arose to invent and forge Affidavits and Assignments on behalf of the bankrupt entities.

The similar issue occurs when a Servicer of an MBS/Trust needs to invent an assignment, when the Mortgage is held by the "nominee" MERS. Like the third-party default service companies, the Servicer fabricates and executes the Assignment on behalf of the Mortgagee MERS. A double forgery takes place when the Assignor purports to act on behalf of a non-existent or bankrupt entity.

In lieu of valid Promissory Notes, Mortgages and Mortgage Assignments, MBS/Trusts relied and continue to rely on these fabricated documents produced and executed by their own law firms and third-party default service companies.

Although the greatest risk of fraud from the fraudulently produced assignments is imposed on the homeowners, this scheme poses a great risk in the exposure of the Title Companies that guaranteed the clear and correct transfer of ownership. Additional risk is imposed on both homeowner and the Title Company due to the fact that the loans were never owned by the MBS/Trust, making the clear and correct transfer of title impossible. The MBS/Trust, Trustee or Servicer has come to the foreclosure asserting standing when it is neither the owner of the underlying debt or the valid Mortgagee.

Defendant No. 1, and other entities such as M&I Bank, Regions Mortgage, Deutsche Bank, U.S. National Bank Association, J.P. Morgan Chase, Wells Fargo, CITI, MERS, and Servicing Agents such as GMAC, Aurora Loan Services, CitiMortgage and Nationstar Mortgage, have administered thousands of foreclosure actions in the State of Tennessee and throughout the United States, including this

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF.

- 19 -

attempted illegal foreclosure against the Plaintiff , under false pretenses, without the legal authority to do so.

In summary, Defendants' egregious and ongoing and far reaching fraudulent schemes of fraud in the inducement, fraud in the execution, usury, and breaches of contractual and fiduciary obligations as Mortgagee or "Trustee" on the Deed of Trust, "Mortgage Brokers," "Loan Originators," "Loan Seller," "Mortgage Aggregator," "Trustee of Pooled Assets," "Trustee or officers of Structured Investment Vehicle," "Investment Banker," "Trustee of Special Purpose Vehicle/Issuer of Certificates of 'Asset-Backed Certificates,'" "Seller of 'Asset-Backed' Certificates (shares or bonds)," "Special Servicer" and Trustee, respectively, of certain mortgage loans pooled together in a trust fund.   The participants in the securitization scheme described herein have devised business plans to reap millions of dollars in profits at the expense of Plaintiff and other investors in certain trust funds.

In addition to seeking Temporary and Permanent Injunctive Relief, compensatory, consequential and other damages, Plaintiff seeks declaratory relief as to what (if any) party, entity or individual or group thereof is the owner of the promissory note executed at the time of the loan closing, and whether the Deed of Trust (Mortgage) secures any obligation of the Plaintiff, and A Mandatory Injunction requiring re-conveyance of the subject property to the Plaintiff or, in the alternative a Final Judgment granting Plaintiff Quiet Title in the subject property.

<u>PREVIOUS LAWSUITS</u>

There are no lawsuits pending before a U.S. District Court regarding the matters and parties as complained of herein.

<u>EXHAUSTION OF ADMINISTRATIVE REMEDIES</u>

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF.
- 20 -

1       The Plaintiff after having his Mortgage Professionally Analyzed was informed

2  and complained of herein, discrepancies with the body of the loan documents;

3  specifically to language therein, which purports to create impressions, wherein no

4  such facts existed at the time of contractual negotiations, nor included within the

5  body of the documents, removing the presumed and excepted as such, where and are

6  in fact true, for which Notice was given to the know lenders, trustees, beneficiaries

7  assignees, successors, fiduciaries and agents of the Plaintiff's request for full

8  disclosure of the loan, loaned proceeds and subsequent accounting Thereof, pursuant

9  to U.S.C. Title 12, Sec 27, § 2605; copies of Commercial Affidavit of Truth,

10       The Defendant(s) Thereafter did submitted a standard "payment summary",

11  which in turn would requires a presumption of facts; Therefore the Defendant(s) was

12  non responsive to the Plaintiff's demand for facts as complained of herein.

13       Thereafter, the Plaintiff did have notice served upon the Defendant(s) to cure

14  the defects(s) of their response, in manner consistent with this administrative

15  requirement.

16       The Defendant(s) failure to respond as demanded, resulting acquiescence to

17  facts Therein and issuance of a Notary Protect.

18       The Defendant(s) failure to substantially respond as requested too account for

19  the loan proceeds, lending practices and validation  and rather than cease and desist

20  collections and respond to the request and demand as required, the Defendant(s)

21  continue to collect and receive payments without compliance as required.

22  the Plaintiff's ability to recover the Deed of Trust as complained for herein.

23       As such, the Defendant(s) willful failure to adhere to U.S.C. Title 12, Sec 27,

24  § 2605, in effect negated the Plaintiff's administrative remedies, failed in legally

25  validate their administrative claim, and as such, the Plaintiff's administrative

26  remedies have been exhausted.

27

28

## JURISDICTION

The Plaintiff primary residence is in the State of Tennessee, a Citizen of the United States and Real Properties complained for is located at: 8840 Tour Circle , Memphis, Tennessee 38125.

The alleged violation(s) contained herein occurred in the State of California, United States, by the Defendant(s) respectively, wherein the offense was committed, in violation of the Plaintiff's rights and applicable State and Federal Statutes, Code, Laws and customs.

The Defendant(s)'s are as follows:

Defendant(s) No.1: BANK OF AMERICA, N.A., having a main office at 100 N. Tryon St. Charlotte, NC 28255, (Fax 704-386-6699) is incorporated under the laws of North Carolina, as such is sued in their known Corporate Name's and Capacities, whereas upon discovering the true names and capacities, the Plaintiff would seek a Court Order to amended the Complaint to reflect the Defendant(s) true names and capacity.

Defendant(s) No.2: BAC HOME LOAN SERVICES, a subsidiary of BANK OF AMERICA, N.A., having a main office at 4500 Amon Carter Blvd, Fort Worth, TX 76155, is incorporated under the laws of Texas, as such is sued in their known Corporate Name's and Capacities, whereas upon discovering the true names and capacities, the Plaintiff would seek a Court Order to amended the Complaint to reflect the Defendant(s) true names and capacity.

Defendant(s) No. 3: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC MERSCORP, hereinafter collectively ("MERS") and the MERS Shareholders (MERS), having a main office at 1818 Library Street, Suite 300 Reston, VA 20190 is incorporated under the laws of Virginia, (Fax 703 748-0183) as such is sued in their known Corporate Name's and Capacities, whereas upon discovering the true names and capacities, the Plaintiff would seek a Court Order to amended the Complaint to reflect the Defendant(s) true names and capacity.

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF.
- 22 -

Defendant Merscorp, Inc., is a foreign corporation created in or about 1998 by conspirators from the largest banks in the United States in order to undermine and eventually eviscerate long-standing principles of real property law, such as the requirement that any person or entity who seeks to foreclose upon a parcel of real property: 1) Be in possession of the original note, 2) Have a publicly recorded mortage in the name of the party for whom the underlying debt is actually owed and who is the holder of the original Promissory Note with legally binding assignments, and 3) Possess a written assignment giving he, she or it actual rights to the payments due from the borrower pursuant to both the mortgage and note.

The Court has original and subject matter jurisdiction over the Plaintiff's statutory and common law violations of RICO.

Venue is proper in this Judicial District as the Plaintiff's property is located in Wilson County, Tennessee. Defendants have conducted business, albeit illegally in this County and throughout the one hundred and twenty (120) Counties in Tennessee and throughout the United States by filing tens of thousands of fabricated, illegal and unenforceable Promissory Notes, Assignments of Promissory Notes, Affidavits as to loan ownership and Status of Accounts, Mortgages and Assignments of Mortgages.

## STATEMENT OF FACTS

The Plaintiff did entered into a Loan Agreement between Bank of America, N.A. ("BAC"), who was to provide funding for the purpose of Real Property acquisition, and as such was direct by "BAC" to execute Two (2) separate and distinctive Commercial instruments, which were to be utilized and monetarized for the purpose of credit, hereafter referred to as Promissory Note's "Note(s)" and subsequent Deed of Trust for the purpose of a real property transaction.

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF.
- 23 -

The Promissory Note's "Note(s)" which according to Federal Reserve monetary policy was as a matter of practice converted into a collateralized mortgage or debt obligation (CMO or CDO), and subsequently the substance of the loan, and converted into a "Certificate".

"BAC" did create, and present to the Plaintiff both a Promissory Note, which had a value upon execution as was the case, and a Deed of Trust which in fact, transferred interest from the Plaintiff to unknown parties, unbeknownst to the Plaintiff, as further complained of herein.

The Deed of Trust, and subsequent Note(s) had been presented to the Plaintiff at signing, and withdrawn prior to the Plaintiff thoroughly familiarizing himself with language Therein, nor was There a Notice of Right to Cancellation and copies of the documents signed present and given to the Plaintiff at the time of signing as required, Therein negating the Plaintiff's right to cancel, giving a thorough and full comprehension of the lending procedures as complained of herein.

Whereas, the Lender absent a asset instrument (Note) has no capability to lend save for the value of the instrument, and an exchange for value Thereafter as further defined in the Federal Reserve Operational Manual, Chicago Federal Reserve "**Bank Reserves and Deposit Expansion**".

As such, the Defendant(s), did[1] in effect illegally converted[1] the Plaintiff's instrument; received double the value, less discounted cost for the instruments, thereafter misleading the Plaintiff as too the facts of the exchange, depriving the Plaintiff of credit(s), and deceived the Plaintiff into executing the Deed of Trust,

---

[1] conversion n. a civil wrong (tort) in which one converts another's property to his/his own use, which is a fancy way of saying "steals." Conversion includes treating another's goods as one's own, holding onto such property which accidentally comes into the converter's (taker's) hands, or purposely giving the impression the assets belong to him/his. This gives the true owner the right to sue for his/his own property or the value and loss of use of it, as well as going to law enforcement authorities since conversion usually includes the crime of theft.

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF.
- 24 -

which serves no purpose other than the transfer of ownership, and waive RIGHTS TO DUE PROCESS, WITH DISCLOSURE OF SAID EFFECT.

Thereafter the Plaintiff did contact by correspondence a request for validation and mitigation of the Defendant(s)'s acts as complained of herein. Allowing for reasonable time of response, the Defendant(s) did acknowledge the correspondence, but failed Thereafter to validate and/or negotiate the discrepancies, thus the intent was to defraud the Plaintiff of the value of the instrument(s), to be the benefit of the Defendant(s) individually and collectively.

Whereas on information provided by "BAC" and belief held therein by the Plaintiff to be true that immediately prior too and after closing the loan, Plaintiff was informed by "BAC" they had directly fund for his loan, whereas the Defendant, MORTGAGE ELECTRONIC REIGSTRATION SYSTEMS, INC., was nominated as the beneficiary by "BAC".

Whereas, MERSCORP ("MERS") Defendant Merscorp, Inc., claims to be the sole shareholder in an entity by the name of Mortgage Electronic Registrations Systems, Inc., ("MERS"). MERS is the RICO enterprise and is the primary innovation through which the conspirators, including the Defendants, have accomplished their illegal objectives as detailed throughout this Complaint.

For the purposes of this action, MERS shall also refer to each and every shareholder of MERSCORP, who will be named as their identities are revealed.

The Complaint names the entity, Mortgage Electronic Registration Systems, Inc., hereinafter, ("MERS").

Wherein, MERS is not the original lender for any of the Plaintiff's loans.

MERS is not the creditor, beneficiary of the underlying debt or an assignee under the terms of the Promissory Notes of the class members. MERS does not hold the original of the Promissory Note, nor has it ever held the Promissory Notes of the Plaintiff.

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF.
- 25 -

The Mortgagee, MERS, is a owned by the company, MERSCORP, which is in turn owned by a group of Wall Street investment Banks.

MERS is unregistered and unlicensed to conduct mortgage lending or any other type of business in the State of Tennessee, and has been and continues to knowingly and intentionally, illegally and fraudulently record mortgages and conduct business in Tennessee on a large scale and systematic fashion.

No promissory Note or other evidence exists which could ever make the Plaintiff indebted to MERS in any way.

MERS never had nor will it ever have standing to enforce the illegal and fraudulent mortgage it filed against the property in question. MERS never had nor will it ever have the authority to assign the Mortgage to any entity.

MERS has never possessed a pecuniary or financial interest in the Note of the Plaintiff.

MERS has never had any right to collect on the Note or enforce the Mortgage, nor has it had a right to hold, enforce or collect upon any of the thousands of Mortgages it has fraudulently recorded throughout the State of Tennessee, in the 50 states, the District of Columbia and all other US Territories.

On information and belief, Defendants BANK OF AMERICA; BAC HOME LOAN SERVICES & MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS), as rescinded beneficiary are business entities that initiated an illegal non-judicial foreclosure sale proceeding under an alleged power of sale to foreclose contained in a "Rescinded Deed of Trust allegedly a security instrument against the subject matter "Real Property".

Plaintiff is informed and believes, and thereupon alleges that said alleged Promissory Note and Deed of Trust executed by Plaintiff, has long since been intentionally destroyed after being paid in full, or assigned to a third party, as such that Defendants BANK OF AMERICA; BAC HOME LOAN SERVICES & MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS). as

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF.

- 26 -

rescinded beneficiary, [hereafter referred as "Defendants and each of them"] lacks or lacked standing to initiate a foreclosure proceeding against the subject property.

## CLAIMS FOR RELIEF

## COUNT I:
## RESCISSION OF DEED OF TRUST

Plaintiffs reaffirm and re-allege the above paragraphs as set forth more fully herein below.

Plaintiff did relied upon Defendant (BANK OF AMERICA, N.A.,) and Defendant's agent(s) assurance that all facts had been disclosed pursuant to the Loan Document(s), whereas the Defendant(s) failed to provide full disclose or party capable of full disclose at the time of signing, with regards to the nature of the relationship between the Defendant(s), named within the documents, i.e. Lender, Trustee, Beneficiaries, Servicers and Assignee(s) all unknown to the Plaintiff; pertinent and relevant facts known to the Defendant and unknown to the Plaintiff, such as where was Title vested at the time of signing, as well as other such facts not obvious or simply comprensible langauge disclosing relevant fact within the contexts of the documents.

Whereas, in lieu of complaining for Recession, and in the interest of expediency the Plaintiff did take the appropriate actions to rescind, record and have notice given to all known parties of interest.

The right of recession being vested in statute, the Plaintiff acts to do so, does not preclude the right to seek an Adjudication of the act, and an Order in effect sustaining both the act, given sufficient grounds and remedies contained therein[1].

---

[1] **Relief Based Upon Rescission**

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF.

- 27 -

The Plaintiff did in fact, Rescind the Deed(s) of Trust complained of herein, thereafter record and have notice given (by Notary Mailing Services) to known parties of interest.

As a direct and consequence of and in connection with Plaintiff's legal and lawful exercise of their right of rescission, the true "Trustee" is required, within twenty (20) days of this Notice of Rescission, to desist from activities assigned within the Rescinded Deed of Trust.

Whereas, Power to sell as passing with mortgage assignment. Power of sale under assigned mortgage Where a power to sell real property is given to a mortgagee, or other encumbrancer, in an instrument intended to secure the payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument. The power of sale may be exercised by the assignee if the assignment is duly acknowledged and recorded.

The holder of a note secured by a deed of trust is not "an encumbrancer" to whom a power of sale is given, within the meaning of this section. Stockwell v. Barnum (1908, Cal App) 7 Cal App 413, 94 P 400, 1908 Cal App LEXIS 358.

A power of sale contained in a mortgage is in the nature of a lien upon the property affected by the power, and conveys no estate or title to the land. Goldwater v. Hibernia Sav. & Loan Soc. (1912, Cal App) 19 Cal App 511, 126 P 861, 1912 Cal App LEXIS 1.

---

In an action based upon rescission, courts may order whatever relief is necessary to adjust the equities between the parties and ensure restoration to the precontract status quo. The goal is to reach an equitable result by returning the parties to the position they were in before the contract was entered into and avoiding unjust enrichment. Therefore, such additional relief may operate in favor of either or both parties.

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF.

- 28 -

A power of sale contained in a mortgage is deemed a part of the security; it is a mere incident of the mortgage lien, agreed upon by the parties solely as a means of enforcing it, and has no vitality or force when the lien itself no longer exists. Faxon v. All Persons (1913) 166 Cal 707, 137 P 919, 1913 Cal LEXIS 374, appeared to indicate that a security interest runs with the obligation; in terms of the case at hand, that was, an assignment of the Note amounted to an assignment of the Deed of Trust (however, the bank provided no convincing evidence that the Note was ever assigned to it). Deutsche Bank Nat'l Trust Co. v. Urdahl (in re Urdahl) (2008) 2008 Bankr LEXIS 4493.

As well, the Deed of Trust makes reference to the "Note" in question. In order to have any Standing to bring and action against the property one must have the original Note or on behalf of the holder of the original Note in accordance with "Assuming for the moment that the assignment of the note, secured by the third trust deed, was a valid assignment, no further assignment of the deed of trust was necessary. The transfer of a thing transfers also all its incidents, unless expressly excepted; but the transfer of an incident to a thing does not transfer the thing itself. [ Hurt v. Wilson, 38 Cal. 263; Lewis v. Booth, 3 Cal.2d 345 [44 P.2d 560]; Marx v. McKinney, 23 Cal.2d 439, 443 [144 P.2d 353]; Union Supply Co. v. Morris, 220 Cal. 331 [30 P.2d 394].) In Lewis v. Booth, supra, 3 Cal.2d 345, it was held that an acknowledgment was not necessary to effect an assignment of the trust deed and that the endorsement of the note by the payee was sufficient to transfer the deed of trust without other assignment. In Santens v. Los Angeles Finance Co., 91 Cal.App.2d 197 [204 P.2d 619], it was held that the note carries with it the security and the trust deed was merely an incident of the debt and could only be foreclosed by the owner of the note" Cockerell v. Title Ins. & Trust Co., 42 Cal. 2d 284

The assignment of the judgment refers to the bond, and carries it with it. The bond, when filed, became part of the record in that case, and passed with the judgment, as much as the assignment of a note carries with it the mortgage, the latter

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF.
- 29 -

being merely incident to the debt. (Jackson v. Blodge, 5 Cowen, 202; Patterson v. Hull, 9 Cowen, 747; Moses v. Thorne, 6 Cal. 87.

This vital distinction between a mortgagee and a trustee, in its special sense, has, at least for many years, been recognized in the English Courts. It must be still more marked in this State, in view of the doctrine constantly maintained in this Court, that the mortgage is merely an incident to the debt. In England, the great case in point is Cholmondeley v. Clinton, referred to as high authority, 10 Wheat. 174; 2 Jac. and W. 177, 182-5, by Sir Thomas Plumer, M. R., upon a re-argument reversing Sir W. Grant's decision, and 190-1, by Lords Eldon and Redesdale, on appeal in the House of Lords, affirming Sir T. Plumer's decision. All the leaders of the chancery bar--Romilly, Sugden, Leach, Shadwell, besides Mr. Charles Butler, of the law bar-- were employed. One or two points of difference between a mortgagee and a (general) trustee, [**8] are conclusive. In the first place, the mortgagee holds the property pledged for his own security and benefit. Then, his estate is adverse and paramount to that of the mortgagor, so that he may deprive him of the possession and of the title, and may acquire it for himself against his wishes, which a trustee never can. A mortgagee in possession is entitled to the rents and profits until his debt is paid, in his own right and as his own property, and is liable to the mortgagor for nothing but the surplus. (2 Jac. and W. 183.) He may also set up the Statute of Limitations against the mortgagor, which a trustee never can. (2 Jac. and W. 183; Hughes v. Edwards, 9 Wheat. 489, 497.) Gunter v. Janes, 9 Cal. 643 California Uniform Commercial Code § 3104. Negotiable instrument; Checks; Certificate of deposit; Definitions

(a) Except as provided in subdivisions (c) and (d), "negotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it is all of the following:

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF.
- 30 -

(1) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder.

(2) Is payable on demand or at a definite time.

(3) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

(b) "Instrument" means a negotiable instrument.

(c) An order that meets all of the requirements of subdivision (a), except paragraph (1), and otherwise falls within the definition of "check" in subdivision (f) is a negotiable instrument and a check.

(d) A promise or order other than a check is not an instrument if, at the time it is issued or first comes into possession of a holder, it contains a conspicuous statement, however expressed, to the effect that the promise or order is not negotiable or is not an instrument governed by this division.

(e) An instrument is a "note" if it is a promise and is a "draft" if it is an order. If an instrument falls within the definition of both "note" and "draft," a person entitled to enforce the instrument may treat it as either.

1. The definition of "negotiable instrument" defines the scope of Article 3 since Section 3- 102 states: "This Article applies to negotiable instruments." The definition in Section 3- 104(a) incorporates other definitions in Article 3. An instrument is either a "promise," defined in Section 3-103(a)(9), or "order," defined in Section 3-103(a)(6). A promise is a written undertaking to pay money signed by the person undertaking to pay. An order is a written instruction to pay money signed by the person giving the instruction. Thus, the term "negotiable instrument" is limited to a signed writing that orders or promises payment of money. "Money" is

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF.

- 31 -

defined in Section 1-201(24) and is not limited to United States dollars. It also includes a medium of exchange established by a foreign government or monetary units of account established by an intergovernmental organization or by agreement between two or more nations. Five other requirements are stated in Section 3-104(a): First, the promise or order must be "unconditional." The quoted term is explained in Section 3-106. Second, the amount of money must be "a fixed amount * * * with or without interest or other charges described in the promise or order." Section 3-112(b) relates to "interest." Third, the promise or order must be "payable to bearer or to order."

The quoted phrase is explained in Section 3-109. An exception to this requirement is stated in subsection (c). Fourth, the promise or order must be payable "on demand or at a definite time." The quoted phrase is explained in Section 3-108. Fifth, the promise or order may not state "any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money" with three exceptions. The quoted phrase is based on the first sentence of N.I.L. Section 5 which is the precursor of "no other promise, order, obligation or power given by the maker or drawer" appearing in former Section 3-104(1)(b). The words "instruction" and "undertaking" are used instead of "order" and "promise" that are used in the N.I.L. formulation because the latter words are defined terms that include only orders or promises to pay money. The three exceptions stated in Section 3-104(a)(3) are based on and are intended to have the same meaning as former Section 3-112(1)(b), (c), (d), and (e), as well as N.I.L. § 5(1), (2), and (3).

Subsection (b) states that "instrument" means a "negotiable instrument". This follows former Section 3-102(1)(e) which treated the two terms as synonymous.

A promissory note falls under UCC Art. 3 because it is a negotiable instrument, once it is securitized, it falls under UCC Art. 8 & 9 as a security. The banks maybe illegally selling your un-registered instrument. Deeds of trust and mortgage deeds are always registered as evidences of debt... notes are never

registered... selling un-registered securities is an automatic right of rescission of the original contract. You possess entitlement rights and possessory rights to your original note... it is negotiable.

## COUNT II:

## VIOLATIONS OF HOME OWNERSHIP EQUITY PROTECTION ACT

Plaintiffs reaffirm and re-allege the above paragraphs as set forth more fully herein below.

In 1994, Congress enacted the Home Ownership Equity Protection Act ("HOEPA") which is codified at 15 USC sec. 1639 et seq. with the intention of protecting homeowners from predator lending practices targeted at vulnerable consumers. HOEPA requires lenders to make certain defined disclosures and prohibits certain terms from being included in home loans. In the event on noncompliance, HOEPA imposes civil liability for rescission and statutory and actual damages.

Plaintiffs are "consumers" and each Defendant is a "creditor" as defined by HOEPA. In the mortgage loan transaction at issue here, Plaintiffs were required to pay excessive fees, expenses, and costs which exceeded more than 10% of the amount financed.

Pursuant to HOEPA and specifically 15 USC sec. 1639(a)(1), each Defendant is required to make certain disclosures to the Plaintiffs which are to be made conspicuously and in writing no later than three (3) days prior to the closing.

In the transaction at issue, Defendants were required to make the following disclosures to Plaintiffs by no later than three (3) days prior to said closing:

"You are not required to complete this agreement merely because you have received these disclosures or have signed a loan application. If you obtain this loan,

1  the lender will have a mortgage on your home.  You could loose your home and any

2  money you have put into it, if you do not meet your obligation under the loan."

3      Defendants violated HOEPA by numerous acts and material omissions,

4  including but not limited to:

5      a)    failing to make the foregoing disclosure in a conspicuous fashion;

6      b)    engaging in a pattern and practice of extending credit to Plaintiffs without

7  regard to their ability to repay in violation of 15 USC sec. 1639(h).

8      By virtue of the Defendants' multiple violations of HOEPA, Plaintiffs have a

9  legal right to rescind the consumer credit transaction the subject of this action

10  pursuant to 15 USC sec. 1635.  This complaint is to be construed, for these

11  purposes, as formal and public notice of Plaintiff's Notice of Rescission of the

12  mortgage and note.

13      Defendant's further violated HOEPA by failing to make additional

14  disclosures, including but not limited to Plaintiff not receiving the required

15  disclosure of the right to rescind the transaction; the failure of Defendants to provide

16  an accurate TILAA disclosure; and the amount financed being understated.

17      As a direct and consequence of and in connection with Plaintiff's legal and

18  lawful exercise of their right of rescission, the true "lender" is required, within

19  twenty (20) days of this Notice of Rescission, to:

20      a)    desist from making any claims for finance charges in the transaction;

21      b)    return all monies paid by Plaintiffs in connection with the transaction to

22  the Plaintiffs;

23      c)    satisfy all security interests, including mortgages, which were acquired in

24  the transaction.

25      5. Upon the true "lenders" full performance of its obligations under HOEPA,

26  Plaintiffs shall tender all sums to which the true lender is entitled.

27      6. Based on Defendants' HOEPA violations, each of the Defendants is liable to

28  the Plaintiffs for the following, which Plaintiffs demand as relief:

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF.

- 34 -

a) rescission of the mortgage loan transactions;

b) termination of the mortgage and security interest in the property the subject of the mortgage loan documents created in the transaction;

c) return of any money or property paid by the Plaintiffs including all payments made in connection with the transactions;

d) an amount of money equal to twice the finance charge in connection with the transactions;

e) relinquishment of the right to retain any proceeds; and

f) actual damages in an amount to be determined at trial, including attorney's fees.

## COUNT III:
## COMMON LAW/STATUTORY LAW/FRAUD
## AND FRAUDULENT MISREPRESENTATION

Plaintiffs reaffirm and reallege paragraphs above herein as if specifically set forth more fully herein below

Defendants knowingly and intentionally concealed material information from Plaintiffs which is required by Federal Statutes and Regulations to be disclosed to the Plaintiffs both before and at the closing.

Defendants misrepresented material information to the Plaintiffs with full knowledge by Defendants that their affirmative representations were false, fraudulent, and misrepresented the truth at the time said representations were made.

Under the circumstances, the material omissions and material misrepresentations of the Defendants were malicious.

Plaintiffs, not being investment bankers, securities dealers, mortgage lenders, or mortgage brokers, reasonably relied upon the representations of the Defendants in agreeing to execute the mortgage loan documents.

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF.

- 35 -

Had Plaintiffs known of the falsity of Defendants representations, Plaintiff would not have entered into the transactions the subject of this action.

Plaintiff incorporates by this reference each and every paragraph of this Complaint as if set forth fully herein.

Tennessee Code Annotated. TCA §39-14-105. In a real estate transaction this occurs when a party makes a false representation of fact or a false promise to induce the plaintiff to enter into an agreement, the plaintiff relies on the false promise by entering into the agreement, and the reliance causes injury to the plaintiff. The presence of fraud in a contractual proceeding makes the contract voidable by the party upon whom the fraud was perpetrated. Fraud occurs generally where there is an intentional deception made for personal gain or to damage another. For a civil verses a criminal claim under contract law, there are six elements: 1) a "material misrepresentation;" 2) "which is false;" 3) which Defendant knew "to be false or made recklessly;" 4) which was made in order to induce Plaintiff to act in a certain manner; 5) that Plaintiff so acted in reliance on the misrepresentation; and, 6) that Plaintiff was injured as a result of this reliance.

As a direct and proximate cause of the Defendants' material omissions and material misrepresentations, Plaintiffs have suffered damages.

## STATEMENT OF RELEVANT TENNESSEE LAW AND THE
## UNIFORM COMMERCIAL CODE

The alleged Notes in question, started their life as negotiable instruments. They were similar to a check. The negotiation and enforceability of both Notes and checks are governed by Article Three (3) of the Uniform Commercial Code. To enforce a negotiable instrument, a person must be a holder of the note. To meet the definition of a "holder," the person must possess the note, and the note must be issued or endorsed to him or to his order or to bearer or in blank. The Defendants are

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF.
- 36 -

not in possession of the original negotiable instrument with any legally binding original endorsement.

If the Party, at a later date, attempts to claim that the original documentation was somehow "lost," the Note will never be enforceable, as made obvious by official comments to the UCC § 355.3-203, that read as follows: " X signs a document conveying all of X's right, title, and interest in the instrument to Y. Although the document may be effective to give Y a claim to ownership of the instrument, Y is not a person entitled to enforce the instrument until Y obtains "possession" of the instrument. No transfer of the instrument occurs under Section 3-203(a) until it is delivered to Y." the Note and the Mortgage were bifurcated at inception and were and remain unenforceable as a Secured Transaction under the Uniform Commercial Code and Tennessee law.

There is no assignment of the Promissory Note to the foreclosing Party. Any alleged Affidavits of ownership and Account Status and the Assignment of the Mortgage are believed to be forged instruments. Those forged instruments have been uttered or published into the public record with the County Clerk in order to administer the illegal sale, hence, Mortgage Fraud and Forgery violations have occurred.

It is asserted that the Law Firm initiating this foreclosure action and the Defendants, have conspired with each other and their other agents and principals to file a false and fraudulent Foreclosure Action and to later create a false and forged Mortgage Assignment.

During the origination of the loan, the Lender, MERS, the Defendants (if it funded the loan and was the "true lender"), and the Title Company conspired together to commit illegal acts pursuant Federal and State law.

Moreover, the so-called "bogus note" submitted with many Complaints and "Lost Note" affidavits, filed by the thousands present issues of more interest than the basic enforcement of the Uniform Commercial Code. When a Court allows the

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF.
- 37 -

Foreclosure and or Sale in a contested non-judicial state, based solely on sham pleadings, the entire community is affected as well as the home owner, because the foreclosure was based on forged documents, of entities who did not own the Note, nor did they know the owner.

In today's environment, in which mortgage notes are freely traded, and serve as collateral for various investment vehicles this "owner of the claim issue" is more important than ever: (a.) to determine whether the Note and Mortgage have been bifurcated and issued to separate entities, making neither enforceable; (b.) to determine whether a real "holder" or "bearer" of the Note even exists; (c.) to determine whether the debt has been paid in a credit default swap (Insurance Policy) a derivative contract, or by the Servicer under a Pooling Agreement; (d.) if the Note was in fact "securitized," hence becoming a "Security" it was no longer a Negotiable Instrument/Mortgage Note and is no longer enforceable as a Mortgage Note; (e.) to have Mortgages declared void and Titles quieted whenever mortgages have been recorded in the name of the entity MERS.

The actions of the Defendants were committed intentionally, willfully, wantonly, and with reckless disregard for the rights of the Plaintiffs.

As a direct and proximate result of the actions of the Defendants in combination resulting in fraud and breaches for the fiduciary duties, Plaintiffs have suffered damages.

## COUNT IV:

## CIVIL RICO

Plaintiffs reaffirm and reallege paragraphs above herein as if specifically set forth more fully herein below.

The conspiracy the subject of this action has existed from the date of application to the present, with the injuries and damages resulting there from being continuing.

Defendants' actions and use of multiple corporate entities, multiple parties, and concerted predetermined acts and conduct specially designed to defraud Plaintiffs constitutes an "enterprise," with the aim and objective of the enterprise being to perpetrate a fraud upon the Plaintiff's through the use of intentional nondisclosure, material misrepresentation, and creation of fraudulent loan documents.

Each of the Defendants is an "enterprise Defendant." As a direct and proximate result of the actions of the Defendants, Plaintiffs have and continue to suffer damages.

## COUNT V:

## QUIET TITLE

Plaintiffs reaffirm and reallege paragraphs above herein as if specifically set forth more fully herein below

The property that is the subject of this action is located at 8840 Tour Circle, Memphis, TN 38125.

Legal Tender having been made a part of the signing , by means of a "NOTE"[1] was TENDERED and ACCEPTED, as such Satisfaction and accord afforded, without dishonor, prior to the execution of the Deed of Trust.

The title of the plaintiff as to which a determination is sought is attached as an exhibit, and the basis is that plaintiff purchased the home from the previous owner, not the Defendants forming a valid and binding contract entitling Plaintiff to possession and title of the property.

---

[1] A **banknote** (often known as a **bill**, **paper money** or simply a **note**) is a kind of negotiable instrument, a promissory note made by a bank payable to the bearer on demand, used as money, and in many jurisdictions is legal tender

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF.

- 39 -

Plaintiff is and at all times herein mentioned was the owner and/or entitled to possession of the property located at 8840 Tour Circle, Memphis, TN 38125.

Plaintiff is informed and believes and thereupon alleges that Defendants claims an interest in the property adverse to the plaintiff herein. However, the claim of said Defendants is without any right whatsoever, and said Defendants have no legal or equitable right, claim, or interest in said property.

Plaintiff therefore seeks a declaration that the title to the subject property is vested in plaintiff alone and that the defendants herein, and each of them, be declared to have no estate, right, title or interest in the subject property and that said defendants, and each of them, be forever enjoined from asserting any estate, right, title or interest in the subject property adverse to plaintiff herein.

The Plaintiff is entitled to have his property as referred to herein quieted in his names until and unless some party comes forward during this litigation who has a right to enforce the loans upon the house free and clear of all encumbrances.

The originators of the loans were brokers of loans and intended to place the loans but to never be the "lenders" that they purported to be.

The originators of the loans, were, in fact, a means by which MERS and the Defendants could insulate themselves from liability for the breach of contract, the violation of lending and recording laws, and for all the reasons stated in the allegations of this Complaint.

The Defendants have not loaned any money to the Plaintiff.

The Defendants have no contractual relationship with the Plaintiff.

The Defendants are not the holders in due course of the promissory notes on the Plaintiff's property.

No one who has an interest in the Plaintiff's property has made any claim of that interest.

The Plaintiff is entitled to have the title to the property quieted in his names as to the Defendants, where a mortgage was ever recorded in the name of MERS.

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF.

- 40 -

## COUNT VI:

## DECLARATORY RELIEF

As alleged in Plaintiff's claims regarding Defendants' wrongful filing of mortgages, foreclosure, unjust enrichment and conspiracy, Plaintiff's rights have been violated.

Defendants have filed mortgages, threatened foreclosure and are now selling the Plaintiff's house at a public auction, for which Defendants are not owed any payments, have no lawful right to foreclose and have unlawfully deprived or attempted to deprive Plaintiff of their home and further have failed to notify the Plaintiff of the discharge of his obligations on the notes associated with his mortgage.

Plaintiff seeks a declaratory judgment against Defendants stating that Defendants have violated Plaintiff's rights and that the Defendants had and have no right to hold mortgages in the name of MERS and/or foreclose on the Plaintiff's property and that the Defendants are entitled to no further payments from the Plaintiff or recognition in Plaintiff's Title to their property.

Plaintiff has been intentionally misled about the terms and conditions of the agreements entered into with the Defendants, MERS and all other yet to be named lenders, who originated loans or who have attempted to foreclose on the Plaintiff.

The Plaintiff is entitled to a reformation of these agreements and note as an unsecured note or as partially or wholly a discharged note and a right to reformation of the contracts with the persons or entities who are owed obligations because of funding of the loans of the Plaintiff.

## RELIEF SOUGHT

WHEREFORE, having set forth numerous legally sufficient causes of actions

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF.

- 41 -

against the Defendants, Plaintiffs prays that:

a. Defendants and., DOES 1-10 and each of them, be permanently enjoined from any and all further attempts to foreclose on the subject real property unless and until it can be present proof that it is entitled, under the law of negotiable instruments in force in Tennessee, to enforce the underlying promissory note described in the security instrument, if any ever existed;

b. The Court find that the transactions the subject of this action are illegal and are deemed void

c. That the foreclosure which was instituted be deemed and declared illegal and void and the further proceedings in connection with the foreclosure be enjoined

d. To set aside the illegal trustee sale;

e. To cancel trustee's deed;

f. To quiet title;

g. That attorneys fees be awarded as permitted by law;

h. For costs of suit incurred; and

i. For such other and further equitable relief, declaratory relief and legal damages as may be permitted by law and as the court may consider just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury of all matters so triable as a matter of right.

## VERIFICATION

I, YOUNGSOO S. LEE, the Plaintiff in the above entitled action. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, expect as to those matters which are therein alleged on information and

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF.

- 42 -

1   belief, and as to those matters, I believe it to be true.

2       I declare under penalty of perjury, under the laws of the State of California,

3   that the foregoing true and correct and that this declaration was executed in Los

4   Angeles, Los Angeles County in the State of California.

5

6       Respectfully submit

7       January 10, 2013

8

9

10                          Youngsoo S. Lee

11                          555 Puddingstone Dr

12                          San Dimas  CA  91773
                            (310) 677-0400  Fax  (310) 677-0403
13

14

15                          In Pro Se

16

17

18

19

20

21

22

23

24

25

26

27

28

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF.

- 43 -